DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**7635 MANDARIN DRIVE, LLC,**
**GENE LAWSON,** and **NITA LAWSON,**
Appellants,

v.

**CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,**
**SUBSCRIBING TO POLICY NO. B050719MKSC000018-00**
Appellee.

No. 4D2023-2474

[August 21, 2024]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Jaimie R. Goodman, Judge; L.T. Case No. 50-2020-CA-013298-XXXX-MB.

S. Antonio Jimenez of Diverse Legal Solutions, A Law Firm, Weston, for appellants.

Richard E. Zelonka, Jr. of Wood, Smith, Henning & Berman LLP, Atlanta, for appellee.

WARNER, J.

The appellants, insured homeowners, challenge the trial court's denial of their entitlement to attorney's fees incurred to petition for an appraisal with the appellee, their insurer, over damages to their home. The trial court denied fee entitlement, because it decided that the insureds had filed suit prematurely before a breakdown had occurred in the claims adjusting process. Because the insureds had supplied meaningful information with respect to the loss and their costs before requesting an appraisal, which the insurer rejected based upon its attorney's mistaken view of the law, we conclude that a breakdown of the adjusting process warranted the insureds filing suit. We thus reverse the denial of insureds' entitlement to attorney's fees.

The insureds' home, covered by the insurer, suffered a water damage loss on May 22, 2020. They promptly reported the loss to the insurer. They retained a public adjuster (PA), who prepared an estimate of damages

of $231,304.72 based on replacement cost value (RCV), which they provided to the insurer. Two months later, the insurer's claim adjuster inspected the property and prepared an estimate of the cost of repairs which the adjuster determined to be $57,005.92, based on RCV. The insurance company sent a check for $51,422.70 as an initial payment of the actual cash value of the loss.

The PA sent a letter with the sworn proof of loss and the estimate which he had prepared, noting that the parties clearly disagreed with the loss value given the substantial difference between the two estimates. The PA requested for the parties to engage in an appraisal pursuant to the policy. The policy provides:

> If you and we fail to agree on the amount of loss, either party may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other.

In the correspondence, the PA appointed himself as the appraiser for the insureds. The insurer wrote back that it would not accept appraisal with the PA as the appraiser, because the PA was not impartial. The PA responded, appointing a disinterested third party as the insurer's appraiser.

Instead of going to appraisal, the insurer retained an attorney who contacted the PA and advised that it was the insurer's position that no dispute existed. He wrote:

> At this time, however, Underwriters are not aware of any actual dispute between the parties. . . . We understand that you have submitted a Replacement Value estimate in the amount of $231,304.72. Under Florida law, replacement costs and/or matching are not owed until those expenses are incurred . . . Thus at this time, Underwriters are unable to determine if there is an actual dispute as the insured has not provided any claimed damages that actually occurred and/or valued on an actual cash basis . . . .

After receiving this response, the PA contacted the insurer's counsel and asked that counsel contact him. The two spoke a few days later but could not reach a conclusion. The insureds then retained their own counsel. After reviewing the case, the insureds' counsel's billing records state that "this matter requires a petition to compel appraisal based on acknowledgment of coverage by the carrier and a clear dispute as to the

amount of the loss, i.e., conflicting estimates by carrier and policyholder." The notes also stated that "Carrier has refused."

The insureds' counsel sent a letter of representation to the insurer, stating that the insureds disagreed with the insurer's loss estimates and requesting that the insurer's counsel furnish a certified copy of the policy, any correspondence which the insurer had with the insureds, and other relevant documents. The insurer did not respond.

Approximately two weeks later, the insureds filed a petition to compel an appraisal. After some service issues, the insurer was finally served. It does not appear in the record, or in the insureds' counsel's billing records, that the insurer's counsel ever communicated with the insureds' counsel during that period. In other words, even after the insurer had received the insureds' counsel's letter of representation and request for documents, the insurer's counsel did not communicate.

After service was obtained, the insurer appeared and filed a motion to dismiss, arguing that the complaint relied on an estimate that contained no evidence of actual cash value of the claimed damages which the insurer argued was the "only form of recoverable damages." The trial court at that point apparently agreed and granted the motion, giving the insureds leave to amend. The insureds moved for rehearing, which the trial court denied but instructed counsel to meet and confer about the resolution of the case before an amended petition was filed. The parties complied, but during their telephone conference, the insurer's counsel maintained that the insurer would not agree to an appraisal unless and until an actual cash value estimate or proof of repairs were provided.

Thereafter, the insureds filed their amended complaint, alleging a one-count breach of contract action, claiming that the insurer had refused to abide by the appraisal policy provision and had refused to appoint an appraiser. The insurer answered and raised as an affirmative defense "concealment or fraud."

The insureds moved to compel the appraisal, arguing that the policy "unambiguously" stated that once a party had demanded an appraisal, the parties were to engage in the appraisal process, and the insureds had demanded appraisal in July 2020. The insureds further stated that a clear dispute existed because their sworn proof of loss showed damages of $226,304.72, and the insurer had determined the loss to be $51,422.70.

The insurer responded that the insureds were not entitled to appraisal pursuant to the policy, because they had provided an estimate based on

3

replacement cost value, not an estimate of actual cash value and/or proof of repairs. The insurer stated that the insureds had "[n]otably . . . not provided any new information regarding their claimed actual cash value damages and continue to seek full replacement costs, even though no repairs have been completed."

The trial court granted the insureds' motion finding "a meaningful exchange of information occurred prior to [the insureds'] invocation of the Policy's appraisal provision."

> [The insureds] were not required to submit an estimate including actual cash value damages prior to invocation of appraisal. Further, as a result a dispute as to the amount of loss presently exists and appraisal is ripe.

The court ordered the dispute to be submitted to appraisal, stayed the case, and ordered specifics as to timing of appraisal events. This order was not appealed by the insurer.

An appraisal occurred, and the award signed by the two appraisers listed the loss value in both replacement cost and actual cash value (replacement cost at $112,540.48 and actual cash value at $111,685.07). The insurer paid the award. Then the trial court entered a final order of dismissal based on the parties' joint stipulation and reserved jurisdiction to determine entitlement to fees.

The insureds moved for attorney's fees pursuant to sections 627.428, 626.911, 626.9373, and 57.041, Florida Statutes (2020), and filed a memorandum in support. The trial court entered an order requiring the insurer to respond to the motion. The insurer then filed a response in opposition to the motion.

The insurer's response argued that the fees which the insureds were seeking were for the costs associated with rushing to the courthouse to file suit, while simultaneously ignoring the insurer's requests for information regarding the loss's actual cash value, which the insurer termed as the meaningful information needed to determine whether a dispute had existed.

After a hearing, the trial court denied the insureds' motion for entitlement to attorney's fees. The court explained:

> [T]he Florida courts look at whether there was a breakdown in the claim adjusting or communication process and whether

4

there was a refusal to pay the claim. "It is only when the claim adjusting process breaks down and the parties are no longer working to resolve the claim within the contract, but are actually taking steps that breach the contract, that the insured may be entitled to an award of fees under Section 627.428 Florida Statutes." *Goldman v. United Services Automobile Association*, 244 So. 3d 310, 311 (Fla. 4th DCA 2018).

The court concluded that no breakdown in communications had occurred, and the insureds' counsel had failed to communicate with the insurer's counsel prior to filing suit. The insurer had sought additional information, which the insureds did not provide, nor did they produce "any evidence that [the insurer had] wholly denied coverage, closed the claim, or were taking steps to breach the insurance contract."

From this order, the insureds filed this appeal.

## Analysis

"Generally, a trial court's determination of which party prevailed and its award of attorney's fees is reviewed for an abuse of discretion." *Valcarcel v. Chase Bank USA NA*, 54 So. 3d 989, 990 (Fla. 4th DCA 2010) (quoting *T & W Developers, Inc. v. Salmonsen*, 31 So. 3d 298, 301 (Fla. 5th DCA 2010)). "However, when entitlement rests on the interpretation of a statute or contract, [] review is de novo." *Id.*[1]

Section 627.428 and its twin, 626.9373,[2] provide for attorney's fees to an insured who secures a judgment in the insured's favor against the

---

[1] The insurer argues that the insureds moved for attorney's fees under the wrong statute because it is a surplus lines carrier and that failure to move under the correct statutes, sections 626.913 and 626.9373, is "alone [] dispositive." But the insurer never raised this argument in the trial court. Therefore, the argument was not preserved. Moreover, the insureds included section 626.9373 as a basis for attorney's fees in their motion. Further, while surplus lines carriers are exempt from section 627.428, surplus lines carriers are "nonetheless . . . subject to an attorney's fees statute that is nearly identical to section 627.428," referring to section 626.9373. *See Bryant v. GeoVera Specialty Ins. Co.*, 271 So. 3d 1013, 1019 n.1 (Fla. 4th DCA 2019) ("Because section 626.9373 is patterned after section 627.428, the confession-of-judgment doctrine applicable to section 627.428 applies equally to section 626.9373."). Thus, even if this argument had been preserved, we would have found it lacked merit.

[2] Both the attorney's fees statutes for regular carriers and surplus lines carriers, sections 627.428 and 626.9373, have been repealed. *See* ch. 2023-15, § §11, 10,

insured's insurance company. "The purpose behind section 627.428 is . . . to place the insured . . . in the place she would have been if the carrier had seasonably paid the claim or benefits without causing the payee to engage counsel and incur obligations for attorney's fees." *Lewis v. Universal Prop. & Cas. Ins. Co.*, 13 So. 3d 1079, 1081 (Fla. 4th DCA 2009) (quoting *Travelers Indem. Ins. Co. of Ill. v. Meadows MRI, LLP*, 900 So. 2d 676, 679 (Fla. 4th DCA 2005)).

Because courts have wanted to discourage a "race to the courthouse" simply to secure the right to collect attorney's fees under the statute, courts have required that the insured and the insurer negotiate in good faith to settle a claim. In *Hill v. State Farm Florida Insurance Co.*, 35 So. 3d 956 (Fla. 2d DCA 2010), the court explained:

> Adjusting and settling property claims under insurance policies is never an easy process. It requires a level of good faith and cooperation from all parties. The law does not provide any general mechanism to impose attorneys' fees against one party or the other merely because the negotiation process is difficult. It is only when the claims adjusting process breaks down and the parties are no longer working to resolve the claim within the contract, but are actually taking steps that breach the contract, that the insured may be entitled to an award fees under section 627.428, Florida Statutes (2004).

*Id.* at 960. In the context of a party demanding an appraisal within the policy terms, in order to secure attorney's fees, the insured must show that this was not a "race to the courthouse" but that the claims' adjusting process has broken down.

"An appraisal demand is ripe where post-loss conditions are met, and the insurer has had a reasonable opportunity to investigate and adjust the claim and *there is a disagreement regarding the value of the property or the amount of loss.*" *Certain Underwriters at Lloyd's v. Lago Grande 5-D Condo. Ass'n, Inc.*, 337 So. 3d 1277, 1280 (Fla. 3d DCA 2022) (quoting *People's Tr. Ins. Co. v. Fernandez*, 317 So. 3d 207, 210 (Fla. 3d DCA 2021)). The disagreement may not be one-sided. There must be "a meaningful exchange of information sufficient to substantiate the existence of a genuine disagreement." *Id.* at 1281 (quoting *Redlhammer v. ASI Preferred Ins. Corp.*, 337 So. 3d 421, 423 (Fla. 3d DCA 2021)).

_____

Laws of Fla. The repeal became effective in March 2023 and does not apply to then-existing cases.

The insureds had complied with all post-loss conditions, including submitting a sworn proof of loss and the PA's estimate of the replacement cost. The insurer's claims adjuster had inspected the property and produced his estimate of the replacement cost. The two estimates were about $150,000 apart, thus showing a substantial disagreement regarding the loss amount. The policy's appraisal provision stated that either party could demand an appraisal where the insured and insurer failed to agree on the loss amount. The PA notified the insurer that the insureds were demanding appraisal, and the PA would be the insurer's appointed appraiser. When the insurer acknowledged the request, it rejected the PA as the appraiser. The insureds then appointed a neutral appraiser. At that point, the insureds had fulfilled all contractual terms. The insurer breached the contract by failing to appoint an appraiser.

Instead, the insurer claimed that no dispute existed, because while the insureds had submitted a detailed estimate based upon RCV, the insureds had not submitted an estimate for the loss's actual cash value. The insurer rejected the PA's estimate even though its own adjuster had examined the property and submitted an estimate also based on RCV. The insurer's counsel continued to demand that the insured submit an estimate of the loss's actual cash value, although nothing in the policy required the insured to submit such an estimate.

The trial court, however, had resolved the issue of whether the insured had submitted meaningful information in its order compelling appraisal. The trial court specifically rejected the insurer's argument and found, "**a meaningful exchange of information [had] occurred prior to [the insureds'] invocation of the Policy's appraisal provision" and "[the insureds] were not required to submit an estimate including actual cash value damages prior to invocation of appraisal**." Further, as a result, "a dispute as to the amount of loss presently exists and appraisal is ripe." The insurer did not appeal that order as it could have, and the insurer paid the appraisal award. Thus, the insurer's arguments regarding whether a dispute existed, and whether appraisal was ripe, were determined by the trial court when it compelled appraisal.

What this also means is that the insurer breached the contract by failing to submit to arbitration and appoint an appraiser within fifteen days of the insureds' demand. The insurer unreasonably refused based upon its unfounded demand for an estimate that the insureds were not obligated to provide under the policy provisions. The trial court's order denying the insureds' entitlement to fees stated no breakdown in the negotiations had occurred, but clearly the insurer's counsel had demanded information

which the trial court had already concluded was not required to be submitted. And the insurer's position that it would not engage in an appraisal without the insureds' actual cash value estimate was a breakdown in negotiations. Because the insurer refused to negotiate without the insureds providing an actual cost value estimate, the lawsuit was the "necessary catalyst to resolve the dispute and force the insurer to satisfy its obligations under the insurance contract." *See Lewis*, 39 So. 3d at 1081.

## Conclusion

The insureds complied with all contractual provisions and demanded an appraisal when a substantial disagreement arose over the loss amount. The insureds also provided meaningful information through which the disagreement could be substantiated. The insurer wrongfully failed to appoint an appraiser to engage in the appraisal, thus breaching the contract. The insureds' petition to compel an appraisal was a "necessary catalyst" to secure the policy benefits. The trial court erred in denying the insureds' entitlement to attorney's fees. We reverse and remand for the court to conduct a hearing on the amount of fees due to the insureds.

*Reversed and remanded with directions.*

GERBER and KUNTZ, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***